**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

**RICHARD CHEATHAM,**            )
                                 )
         **Plaintiff,**          )
                                 )
    **v.**                       )          **Civil Action No. 12-94 (RMC)**
                                 )
**ERIC HIMPTON HOLDER, JR.,**    )
**Attorney General,**            )
                                 )
         **Defendant.**          )
_____  )

**OPINION**

Richard Cheatham, a paralegal employed in the United States Attorney's Office in
Washington, D.C., alleges that his employer discriminated against him on the basis of his gender
and then retaliated against him for complaining about the alleged discrimination. Mr. Cheatham
applied for four different supervisory paralegal positions that the United States Attorney's Office
filled with four women. Mr. Cheatham contacted an equal employment opportunity counselor
and complained about two non-selections. After counseling and informal settlement efforts, Mr.
Cheatham filed a formal administrative complaint, which was accepted as raising discrimination
claims as to the same two non-selections. Prior to a hearing before an administrative judge, Mr.
Cheatham sought to add the _other_ two positions to his complaint, but the judge twice rejected
Mr. Cheatham's motion. This lawsuit alleges gender discrimination in his non-selection for the
two positions that were _not_ investigated. Mr. Cheatham also claims that he has twice
experienced retaliation as a result of his equal employment opportunity activity. The Attorney
General moves for summary judgment, arguing that Mr. Cheatham's failure to exhaust his
administrative remedies bars his discrimination claims and that he has shown a
nondiscriminatory reason for the USAO's alleged retaliatory actions. For the following reasons,

the motion for summary judgment will be granted except as to Mr. Cheatham's retaliation claim based on his 2010 performance evaluation.

## I.  FACTS

### A.  Gender Discrimination Claims and Procedural History

Mr. Cheatham has worked for the United States Attorney's Office in the District of Columbia ("USAO") as a Paralegal Specialist since October 2001.[1]  In the spring of 2008, he applied and interviewed for four Supervisory Paralegal Specialist positions under vacancy announcement 08-DC-048-M.  *See* Def. Mot. Summ. J. ("Def. MSJ") [Dkt. 11], Ex. 11 [Dkt. 11-1] ("Vacancy Announcement"); *accord* Pl. Opp. Def. MSJ ("Pl. Opp.") [Dkt. 14], Ex. 1 [Dkt. 14-2].[2]  The announcement stated that it was for three vacancies: one each in the Felony Major Crimes Section, the General Crimes Section, and the Sex Offense Domestic Violence Section. Vacancy Announcement at 54.  Mr. Cheatham states in his Opposition brief, and the Government does not dispute, that four vacancies were filled from vacancy announcement 08-DC-048-M.  *See* Pl. Opp., Ex. 2 [Dkt. 14-2] ("July 21, 2008 Memo Announcing Hires") at 5–6. The positions were in four different sections of the USAO's Superior Court Criminal Division: (1) the Misdemeanor Unit of the General Crimes Section ("Misdemeanor"); (2) the Felony Unit of the General Crimes Section ("Felony"); (3) the Felony Major Crimes Section ("Grand Jury"); and (4) the Sex Offense/Domestic Violence Section ("Domestic Violence").  *Id.* at 5.

---

[1] Attorney General Eric Holder, sued in his official capacity, is the nominal defendant as head of the Department of Justice, of which the United States Attorney's Offices are a constituent agency.  The Court refers to the D.C. USAO, Mr. Cheatham's immediate employer, as the defendant in this Opinion.

[2] Both parties compiled multiple exhibits to their summary judgment filings on the Electronic Case Filing ("ECF") system.  The Court refers to the exhibits by exhibit number and refers to page numbers by the ECF page numbers.  For example, the Vacancy Announcement, Defendant's Exhibit 11, is pages 54 through 57 of ECF Docket 11-1.

Although he was eligible and was interviewed for all four vacancies, Mr. Cheatham was not selected, and a woman was chosen in each instance. *Id.* Mr. Cheatham states, and the USAO does not dispute, that "he learned on May 21, 2008, that he had not been selected for either the Supervisory Paralegal, Felony-Major Crimes Unit [Grand Jury] or the Supervisory Paralegal, Domestic Violence-Sexual Assault Unit [Domestic Violence] positions for which he applied and interviewed." Pl. Opp. at 3. When he learned he was not selected for the Misdemeanor or Felony positions is not specified.

On May 30, 2008, Mr. Cheatham submitted a complaint form on the website of the Executive Office for United States Attorneys ("EOUSA"), Equal Employment Opportunity ("EEO") Office. *See* Def. MSJ, Ex. 1 [Dkt. 11-1] ("EEO Website Complaint") at 1. He complained that he was not selected for two positions because of his sex. *See id.* at 1–2 ("My most recent act of discrimination was on May 21, 2008. I was not selected for (2) recent Paralegal Supervisor positions."). Mr. Cheatham identified the positions as having been filled by two women, of whom "[o]ne that has not been employed with[] the US Attorney[']s Office no mor [sic] than a year and [a] half, anohter [sic] that was well known throughout the building as a problem employee." *Id.* Pursuant to the EEO process for federal employees, Mr. Cheatham engaged in counseling on his charge, and he attempted mediation. The EEO counselor's summary report noted that Mr. Cheatham complained that he was discriminated against on May 21, 2008, "when he was not selected for either of two (2) vacant Paralegal Supervisor positions, because of his gender (Male)." Def. MSJ, Ex. 2 [Dkt. 11-1] ("EEO Counselor Report") at 5; *see also id.* at 6 ("[T]wo females were selected to fill the two vacant Supervisory Paralegal positions."). On July 14, 2008, Mr. Cheatham received a "Notice of Final Interview" and notice of his right to file a formal complaint. *Id.* at 8.

On July 26, 2008, Mr. Cheatham filed a formal complaint of discrimination with the EOUSA EEO Office.  Def. MSJ, Ex. 3 [Dkt. 11-1] ("2008 Formal EEO Complaint"); *accord* Pl. MSJ, Ex. 6 [Dkt. 14-2].  In it, he complained that the "most recent act of discrimination was on July 21, 2008," concerning a non-selection not challenged here, and that "[e]xactly 30 days earlier [he] applied for (4) paralegal Supervisor positions, and was not selected for not one [sic].  Four females were selected for each of these positions." *Id.* at 11.  The EEO Office responded by letter dated September 2, 2008, and informed Mr. Cheatham that it had accepted his complaint of discrimination for investigation.  Def. MSJ, Ex. 4 [Dkt. 11-1] ("Sept. 2, 2008 Acceptance Letter"); *accord* Pl. MSJ, Ex. 7 [Dkt. 14-2]. The Statement of Issue Accepted was: "Whether management officials of the United States Attorney's Office for the District of Columbia discriminated against the Complainant, Richard L. Cheatham, based on his sex (male), when Complainant learned on May 21, 2008, that he was not selected for *two* supervisory paralegal positions, for which he had recently applied." Sept. 2, 2008 Acceptance Letter at 14 (emphasis added).  The EEO Office advised Mr. Cheatham: "Based upon a review of your Complaint, the Equal Employment Opportunity (EEO) Staff has enclosed the accepted issue for investigation.  If you believe that the accepted issue has not been correctly identified, please notify me, in writing, within five (5) calendar days . . . ." *Id.* at 12.  Mr. Cheatham made no response.  *See* Def. Statement of Undisputed Material Facts ("Def. SoF"), Def. MSJ ¶ 7; Pl. Resp. Def. SoF ("Pl. SoF"), Pl. Opp. ¶ 7.

Mr. Cheatham's formal complaint was investigated by an Assistant United States Attorney from the Western District of Pennsylvania in Pittsburgh.  A Report of Investigation ("2009 ROI") issued on October 19, 2009.  Def. MSJ, Ex. 5 [Dkt. 11-1].  As part of the investigation, Mr. Cheatham answered written questions under oath.  In that forum, he stated that

he had applied for supervisory paralegal positions in "the Misdemeanor Unit" and "the Felony Unit." 2009 ROI at 19. The two selection processes investigated on Mr. Cheatham's behalf were for vacancies as "the paralegal supervisor for the Misdemeanor Unit of the General Crimes Section [Misdemeanor], and the paralegal supervisor for the Felony Unit of the General Crimes Section [Felony]." *Id.* at 20. Among others, interviews were conducted of all persons who had interviewed Mr. Cheatham for the Misdemeanor and Felony supervisory paralegal jobs. *Id.* at 20–22. According to the 2009 ROI, the interviewers stated that Mr. Cheatham was not selected for the Misdemeanor or Felony positions due to his lack of "strong leadership or administrative skills"—specifically, "his admitted difficulty in communicating his ideas and his inability to respond to the hypothetical problems presented to him during his interview." *Id.* at 20. AUSA Jeffrey Ragsdale, chief of the Grand Jury section during the relevant time period, *see* Ragsdale Decl., Def. MSJ, Ex. 12 [Dkt. 11-1] ¶ 1, was also interviewed, and he commented on Mr. Cheatham's interview for supervisory paralegal in Grand Jury, not the Misdemeanor or Felony positions accepted for investigation.[3] The 2009 ROI does not reflect that any person involved in hiring for the Domestic Violence position was interviewed. Mr. Cheatham submitted a rebuttal statement under oath in which he addressed the managers' reasons for his non-selections for the Misdemeanor and Felony vacancies but did not challenge the focus of the investigation on Misdemeanor and Felony positions as arising from his counseling and formal charge. *See id.* at 22.

On September 15, 2009, Mr. Cheatham requested a hearing before an Administrative Judge (AJ) of the Equal Employment Opportunity Commission (EEOC) pursuant

---

[3] AUSA Ragsdale commented that Mr. Cheatham "was qualified for the grand jury supervisor position in that he has strong paralegal skills" but that he was not selected because "he did not have the strong leadership, administrative skills and sufficient grand jury experience necessary to supervise the grand jury section." 2009 ROI at 20.

to 29 C.F.R. § 1614.109.  *See* Pl. Opp., Ex. 8 [Dkt. 14-3] ("Request for Hearing") at 1.  On June

22, 2010, after dispositive motions were briefed and submitted to the AJ—almost two years after

the 2008 Formal EEO Complaint—Mr. Cheatham, acting *pro se*, filed a "Motion to Amend the

Charge(s)" to include his non-selections for the supervisory paralegal vacancies in Grand Jury

and Domestic Violence among his claims of discrimination.  *See* Def. MSJ, Ex. 6 [Dkt. 11-1]

("Mot. Amend Charges"); *accord* Pl. Opp., Ex. 9 [Dkt. 14-3].   Mr. Cheatham argued that his

claims for sex discrimination based upon his non-selection for the paralegal supervisory

positions in Grand Jury and Domestic Violence should be added to his claims before the AJ

because they "arose from the same job announcement (#08-DC-048-M) that the initial two

positions cited in the [ROI] were retrieved from."  Mot. Amend Charges ¶ 3.  He also indicated

that his interview for the Domestic Violence position was conducted by Kelly Higashi, Kimberly

Knowles, and Elana Tyrangiel and that his interview for the Grand Jury position was conducted

by Jeffrey Ragsdale.  *Id.* ¶¶ 2–3.  Mr. Cheatham's motion was denied by the AJ on July 23, 2010,

without opinion.  *See* Def. MSJ, Ex. 7 [Dkt. 11-1] ("July 23, 2010 AJ Order"); *accord* Pl. Opp.,

Ex. 10 [Dkt. 14-3].

      On December 20, 2011, after retaining counsel, Mr. Cheatham filed a motion with

the AJ, asking the AJ to compel the USAO to supplement the 2009 ROI by producing

"comparator information" regarding the two women who were hired for the Grand Jury and

Domestic Violence positions.  *See* Pl. Opp., Ex. 11 [Dkt. 14-3] ("Mot. Compel").  Although the

Motion to Compel stated that "[t]he Complainant is not and has never sought to amend his

charge of gender discrimination from what was accepted by the Agency," Mr. Cheatham argued

that the USAO's "failure to provide a complete [ROI] with respect to all comparators [who] were

selected for the two supervisor paralegal specialist positions" had "substantially prejudiced" him

in the proceedings before the AJ. *Id.* at 11–13. On December 29, 2011, "on the eve of hearing"

set to begin on January 25, 2012, the AJ denied the motion, ruling that it was:

> [A] thinly-veiled attempt to re-visit Complainant's Motion to
> Amend that was previously denied. As the Agency correctly
> points out in its Opposition, Complainant has had several
> opportunities to alter or amend the accepted issues in this
> complaint but failed to do so.
>
> Complainant did not contest the framing of the issues at the
> Agency informal processing stage; or at the formal processing
> stage; or after receipt of the [EEOC] Acknowledgement Order; or
> during discovery. Complainant never informed the tribunal that he
> contested any of the Agency's discovery answers or responses and
> never brought a motion to compel about any discovery dispute. . . .
>
> The Hearing Record demonstrates that the Complainant did not
> move to amend the complaint until after dispositive motions had
> been briefed and submitted to the tribunal and after
> ADR/mediation failed to bring about an amicable resolution of this
> complaint. . . .

Def. MSJ, Ex. 8 [Dkt. 11-1] ("Order Denying Mot. Compel") at 42; *accord* Pl. Opp., Ex. 10

[Dkt. 14-3]. Mr. Cheatham then withdrew his request for a hearing before an EEOC AJ and filed

the present action on January 20, 2012.

On December 13, 2012, the Court directed the parties to provide additional

information to assist in resolving the administrative exhaustion issue. *See* Dec. 13, 2012 Order

[Dkt. 17]. Both parties filed supplemental briefs, *see* Pl. Supp. Opp. [Dkt. 18], Def. Report [Dkt.

19], but neither added to the record in any legally significant way.

### B. Retaliation Claims

Mr. Cheatham also complains of two retaliatory acts by the USAO since his initial

EEO activity. Both of these matters have been fully investigated and considered through the

administrative process and are properly before the Court.

On May 6, 2011, Mr. Cheatham filed a formal EEO Complaint stating that his overall performance rating had been dropped in his 2010 rating from his customary "Outstanding" to "Successful."  *See* Def. MSJ, Ex. 9 [Dkt. 11-1] ("2011 EEO Complaint") at 44. Mr. Cheatham stated that his "performance evaluation(s) [had] declined" since he filed his 2008 EEO complaint despite his "productivity level" and "work ethic" remaining unchanged.  *Id.*  He believed the drop in rating level was retaliatory because during a meeting with Wanda Trice, his supervisor, to discuss his 2010 performance evaluation:

> [Ms. Trice] mentioned to me that part of her reason for giving me an adverse evaluation was because of negative comments she had received from two of the attorneys I had worked with during this evaluation period.  She told me that she believed that their comments were a result of "both of them having received a whiff of my initial gender complaint, and that she believed that they were purposely put in place by Brad Weinsheimer to break me."

*Id.*

On August 17, 2011, the EOUSA EEO Office granted Mr. Cheatham leave to add a second allegation of retaliation to the 2011 EEO Complaint.  *See* Pl. MSJ, Ex. 24 [Dkt. 14-4] ("Aug. 17, 2011 Letter") at 78–80.  Mr. Cheatham contended that on July 8, 2011, he had received a memorandum from supervisors at the USAO informing him that he would be receiving a $1500 "Special Achievement Award," but on August 1, 2011, he was notified that the memorandum had been sent to him in error and that he would not be receiving any award. *Id.* at 78.

An EEO Specialist investigated the 2011 EEO Complaint and prepared a Report of Investigation ("2011 ROI") addressing both of Mr. Cheatham's retaliation allegations.  *See* Def. MSJ, Ex. 10 [Dkt. 11-1]; *accord* Pl. Opp., Ex. 14 [Dkt. 14-3].  As in the investigation of the

2008 EEO Complaint, the investigator collected evidence and conducted interviews of Mr.

Cheatham and other USAO personnel.

### 1. Performance Evaluation

The ratings form used by the USAO to evaluate Mr. Cheatham included an

overall performance rating of either "Unacceptable," "Successful," or "Outstanding."  Def. MSJ,

Ex. 14 [Dkt. 11-2] (2009–10 Evaluations) at 5.[4]  In addition to the overall rating, Mr. Cheatham

was also evaluated on five "critical performance elements" pertaining to his paralegal duties,

with the same three options available to the evaluating official.  *Id.*  The ratings form provided

that the overall rating would be determined by the ratings on performance elements; to be rated

as "Outstanding," an employee needed a majority of "Outstanding" ratings and at least one

"Outstanding" rating on an element "specifically link[ed] to organizational goals and initiatives."

*Id.* at 6.  Prior to 2010, Mr. Cheatham consistently received overall "Outstanding" ratings.  *See*

2011 ROI at 48; *see also* Pl. Opp., Ex. 21 [Dkt. 14-4] ("2004-07 Performance Evaluations").

From 2004 to 2007, Mr. Cheatham received four of five top ratings and an overall "Outstanding"

rating; in 2009, he received three of five top ratings and an overall "Outstanding"; and in 2010,

he received only two of five top ratings and an overall "Successful" rating.  *See* 2004-07

Performance Evaluations; 2009–10 Performance Evaluations.

Mr. Cheatham told the EEO investigator that Ms. Trice had informed him that "a

former section chief may have told two of the [AUSAs] who provide input about [Mr.

Cheatham's] performance about [Mr. Cheatham's] prior EEO activity and that may have led to

the poor rating."  2011 ROI at 47.  According to Mr. Cheatham, he "had not received any

---

[4] This exhibit contains the entire 2010 Evaluation that is the subject of Mr. Cheatham's
retaliation complaint as well as the first page of the 2009 Evaluation; the first page contains a
summary of the ratings Mr. Cheatham received.

complaints from AUSAs regarding his work and . . . he did not have any indication that his work was no longer 'outstanding.'" *Id.*

The EEO investigator spoke to several USAO staffers regarding Mr. Cheatham's complaint, including: Ms. Trice, Mr. Cheatham's supervisor and rating official; Richard Tischner, a USAO section chief and Mr. Cheatham's reviewing official in 2010; Anthony Osborne Griffith, a Lead Paralegal Specialist who worked with Mr. Cheatham; and two of the AUSAs for whom Mr. Cheatham worked, Justin Dillon and Heather Carlton.  2011 ROI at 48–50; *see also* Def. MSJ, Ex. 16 [Dkt. 11-2] (Cheatham Interview Transcript ("Cheatham Tr.")); Def. MSJ, Ex. 17 [Dkt. 11-2] (Wanda Trice Interview Transcript ("Trice Tr.")); Def. MSJ, Ex. 18 [Dkt. 11-3] (Justin Dillon Interview Transcript ("Dillon Tr.")); Def. MSJ, Ex. 19 [Dkt. 11-3] (Heather Carlton Interview Transcript ("Carlton Tr.")).  Ms. Trice acknowledged that she knew of Mr. Cheatham's prior EEO activity when she prepared the 2010 Evaluation but said that she based the evaluation's contents on feedback from the AUSAs who supervised Mr. Cheatham, which was "not positive."  2011 ROI at 48.  Some AUSAs had "outlined their concerns" in e-mails to Ms. Trice, and others who "were not willing to memorialize their concerns" spoke to her "off the record" by telephone.  *Id.*  Ms. Trice also told the EEO Investigator that "she brought the concerns about [Mr. Cheatham's] performance to his attention during the mid-year review, and she 'noticed a slight decline in his performance from the time that he was bitter for not getting selected' for supervisory and lead positions."  *Id.* (quoting Trice Tr. at 13).

Mr. Tischner stated that he had "very little input" into Mr. Cheatham's evaluation and merely "signed off on it," had no personal knowledge of Mr. Cheatham's work, and was not aware of Mr. Cheatham's prior EEO activity when the 2010 Evaluation was reviewed.  *Id.* at 49.  Both of the AUSAs for whom Mr. Cheatham worked disavowed any knowledge of Mr.

Cheatham's EEO activity prior to giving feedback to Ms. Trice for the 2010 Evaluation, but both were critical of Mr. Cheatham's performance. *Id.* at 49-50. *See generally* Dillon Tr.; Carlton Tr. For example, when asked "what aspects of [Mr. Cheatham's] performance did you believe to be unacceptable?", AUSA Dillon responded:

> To be honest, every aspect. And let me say this: I like Richard, he's a nice guy. I have nothing against him personally. I had no idea about his prior EEO complaint, until . . . I received my notice that I was a witness in this. So this is not—nothing personal against him. He seems like a bright guy. He just doesn't seem to want to apply himself, at least to the work I asked him to do. And I can certainly give you examples of that . . . .

Dillon Tr. at 12.

### 2. Cash Award

According to Mr. Cheatham, he received a memorandum from Executive AUSA Rachel Lieber on July 8, 2011, stating that he had been awarded a $1,500 "Special Achievement Award." 2011 ROI at 50. When the money was not included in his paycheck, he inquired why; he was later notified that the memo had been sent to him in error and that he would not be receiving any award. *Id.* The EEO Investigator spoke to several USAO employees in the course of her investigation. *Id.* at 51. Each informed the EEO Investigator that the award was intended for an AUSA with the same last name, Virginia Cheatham, who practiced in DOJ's Fraud and Public Corruption Section, but administrative staff made a "human error" when entering the award information into the computer. *See* Def. MSJ, Ex. 15 [Dkt. 11-2] (Decl. Rachel Lieber) at 14; *accord* Def. MSJ, Ex. 20 [Dkt. 11-3] (Decl. Richard Tischner) at 67–68, Def. MSJ, Ex. 21 [Dkt. 11-3] (Decl. Stephanie Bragg Lee) at 70–71. The Budget Officer who was responsible for entry of the information admitted to a "major mea culpa," and Stephanie Bragg Lee, Supervisory Human Resources Specialist, informed Mr. Cheatham of the error by voicemail. Bragg Lee Decl. at 70–71.

## II.  LEGAL STANDARDS

### A. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  In addition, the nonmoving party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor.  *Id.* at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

### B.  Exhaustion of Remedies under Title VII.

As in the private sector, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, protects federal employees against workplace discrimination.  There are more administrative steps required of a federal employee seeking to sue the federal government than are required of private employees.  A federal employee must first proceed before the agency

accused of discrimination before he may institute a civil action in federal court.  42 U.S.C.

§ 2000e-16(c); *see also Bayer v. Dep't of Treasury*, 956 F.2d 330, 332 (D.C. Cir. 1992).  In fact,

the EEOC has created a comprehensive administrative system for resolving federal

discrimination claims.  *See* 29 C.F.R. Part 1614 (governing Federal Sector Equal Employment

Opportunity).  It is mandatory that an employee exhaust the entire administrative process,

although the exhaustion requirement is not jurisdictional and is subject to "equitable tolling,

estoppel, and waiver."  *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (citing,

*inter alia*, *Brown v. GSA*, 425 U.S. 820, 832–33 (1976); *Bayer*, 956 F.2d at 332).  The exhaustion

requirement gives the charged agency notice of the claim, provides a chance to narrow the issues

for prompt adjudication, creates "an opportunity to resolve the matter internally[,] and [avoids]

unnecessarily burdening the courts."  *Wilson v. Pena*, 79 F.3d 154, 165 (D.C. Cir. 1996); *see also*

*Hairston v. Tapella*, 664 F. Supp. 2d 106, 111 (D.D.C. 2009).

> A federal employee who believes he has been discriminated against "must initiate

contact with a[n] [EEO] Counselor within 45 days of the date of the matter alleged to be

discriminatory. . . ."  29 C.F.R. § 1614.105(a); *see also Weber v. Battista*, 494 F.3d 179, 182–83

(D.C. Cir. 2007).  As happened here, a counseling period then ensues.  "If the matter has not

been resolved, the aggrieved person shall be informed in writing by the Counselor, not later than

the thirtieth day after contacting the Counselor, of the right to file a discrimination complaint."[5]

29 C.F.R. § 1614.105(d).  A formal complaint must be filed with the allegedly discriminating

agency within 15 days of receipt of this notice.  *Id*. § 1614.106(b). The agency must then conduct

an investigation of the formal complaint and provide a copy of the investigative file within

---

[5]  Prior to the end of the 30–day period, an aggrieved employee may agree in writing with the agency to postpone the final interview and extend the counseling period for an additional period of no more than 60 days.  29 C.F.R. § 1614.105(e).

certain time limits—in the case of an initial complaint, within 180 days, and in the case of an

amended complaint, no later than the earlier of 180 days from the date of amendment or 360

days from the filing of the original complaint. *See id.* § 1614.108 (setting forth investigation

procedures). The employee-complainant has 30 days after receipt of the investigative file to

request either a hearing before an EEOC AJ or an immediate final decision from the agency. *See*

*id.* §§ 1614.08(f), (h). Upon receipt of a request for an immediate final decision, the agency has

sixty days to issue a decision. *Id.* § 1614.110(b).

Following exhaustion of administrative remedies, a federal employee must sue

within 90 days of final administrative action or, if the EEOC has not taken final action, within

180 days of filing his initial charge with the EEOC. *See Price v. Greenspan*, 374 F. Supp. 2d

177, 184 (D.D.C. 2005), *aff'd sub nom. Price v. Bernanke*, 470 F.3d 384 (D.C. Cir. 2006); *see*

*also* 42 U.S.C. § 2000e-16(c) (federal employees must file a civil action within ninety days after

"receipt of notice of final action" or "after one hundred and eighty days from the filing of the

initial charge with . . .  the Equal Employment Opportunity Commission"). "In essence, a federal

complainant must file an administrative complaint concerning his or her allegations, and he or

she may not file a civil action more than 90 days after receiving a final decision from either the

employing agency or from the EEOC." *Carter v. Rubin*, 14 F. Supp. 2d 22, 31 (D.D.C. 1998).

### III.  ANALYSIS

The Court addresses Mr. Cheatham's discrimination claims regarding his

nonselection for the supervisory paralegal positions before turning to the retaliation claims.[6]

---

[6] Jurisdiction and venue as to Mr. Cheatham's claims are proper in this Court. *See* 42 U.S.C.
§ 2000e-5(f)(3) ("Each United States district court . . . shall have jurisdiction of actions brought
under this subchapter. Such an action may be brought in any judicial district in the State in which
the unlawful employment practice is alleged to have been committed . . . .").

**A. Discrimination Claims**

The USAO argues that Mr. Cheatham's discrimination claims are barred because he failed to exhaust his administrative remedies and because he cannot rebut the USAO's legitimate, nondiscriminatory reasons for selecting other candidates for the vacant supervisory paralegal positions. Def. MSJ Mem. at 17–26. As to the former argument, the USAO asserts that the two non-selections "were not investigated in the administrative process, and were not addressed in the EEOC proceedings. In light of this fact, . . . [Mr.] Cheatham failed to participate in the administrative process with respect to these non-selections." *Id.* at 20. Because the Court finds that Mr. Cheatham did not exhaust his administrative remedies as to the two positions of which he complains here, and there is no basis for equitable tolling or any other excuse for Mr. Cheatham's failure to exhaust, summary judgment will be granted in favor of the USAO.

Mr. Cheatham applied for four supervisory paralegal positions in the USAO but complained of just two non-selections when he went for EEO counseling—that is, his non-selection for the positions in Misdemeanor and Felony. *See* EEO Website Complaint at 1; EEO Counselor Report at 5. Only two non-selections were accepted for investigation, and the 2009 ROI addressed his non-selections in Misdemeanor and Felony, with only a passing mention of his interview for Grand Jury. *See* 2008 Formal EEO Complaint at 11; Sept. 2, 2008 Acceptance Letter at 14; 2009 ROI at 19. Yet in this Court, Mr. Cheatham claims discrimination based upon only his non-selection for the positions in Grand Jury and Domestic Violence. Am. Compl. [Dkt. 2] ¶ 10. He has not exhausted his administrative remedies on these non-selections and cannot bring them to court now. Essentially, Mr. Cheatham asks this Court to reverse the ruling of Administrative Judge Richard W. Furcolo, who denied Mr. Cheatham's untimely motion to amend his charges to add these specific non-selections to the EEO process. *See* 29 C.F.R.

§ 1614.106(d) (providing that "[a] complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint" but "[a]fter requesting a hearing, a complainant may file a motion with the administrative judge to amend a complaint to include issues or claims like or related to those raised in the complaint").

Mr. Cheatham contends that his complaint here is fully ripe because:  (1) the formal complaint mentioned four non-selections, Pl. Opp. at 15, 18;[7] (2) his Motion to Amend Charges before the AJ was "erroneously" so labeled with a "misleading caption" but its text was "tantamount to a Motion to Supplement" the record, *id.* at 4; (3) when counsel filed a "Motion to Supplement" immediately before the hearing, he "never sought to amend the previously accepted issue for investigation," *id.* at 5; and (4) even if he did not exhaust his administrative remedies, Mr. Cheatham had a right to file a lawsuit because more than 180 days had passed from the date he filed his complaint with the EEOC and he did not obtain a hearing, *id.* at 20–21.

Creative lawyering cannot save Mr. Cheatham's allegations related to the Grand Jury or Domestic Violence non-selections.  Ignoring the facts in the record, counsel asserts that Mr. Cheatham:

> Exhausted his administrative remedies when he filed a complaint of discrimination against the Agency for its failure to promote him to either of two (2) supervisory paralegal positions—[Grand Jury] and [Domestic Violence] of the USAO—within 45 days of learning of his non-selection.

---

[7]  Counsel for Mr. Cheatham describes his informal complaint as covering the "failure to promote him to the supervisory paralegal positions for which he applied and interviewed" and describes his formal complaint as "consistent."  Pl. Opp. at 3.  The argument represents a blatant re-write of history:  the informal complaint was clearly limited to two non-selections, and, while the formal complaint alleged four, only two were accepted for investigation.

Pl. Opp. at 6.  It is true that Mr. Cheatham filed an informal complaint within 45 days concerning

his non-selection for two supervisory paralegal positions, but the record is clear that the EEO

Counselor discussed the Misdemeanor and Felony vacancies but not the Grand Jury or Domestic

Violence vacancies.  Although Mr. Cheatham filed a formal complaint that referenced four non-

selections, the investigation naturally and necessarily was limited to those issues raised before

the EEO Counselor: the Misdemeanor and Felony non-selections.  *See* 29 C.F.R. § 1614.105(a)

("Aggrieved persons . . . must consult a Counselor prior to filing a complaint in order to try to

informally resolve the matter.").  By then, of course, sixty-six days had passed since May 21,

2008, and a complaint about the Grand Jury or Domestic Violence positions would have been

stale.  Mr. Cheatham's belated "discovery" two years later that his case was limited to the

Misdemeanor and Felony non-selections was well out of time.  Of course, he has no excuse for

his delay; even if it were not clear throughout the informal counseling process that his claim

pertained to two positions and not four, that became overwhelmingly clear when the EOUSA

EEO Office stated it explicitly in the September 2, 2008 Letter.

       That Mr. Cheatham understood exactly this same sequence of events is

demonstrated by his Motion to Amend the Charge(s) filed on June 22, 2010, before the AJ.

Recognizing that the accepted issue in September 2008 was his non-selection for *two* supervisory

paralegal positions, Mot. Amend Charges at 26, the remedy he sought was to amend the pending

charge to read "*four* Supervisory Paralegal Positions" and to include the Domestic Violence and

Grand Jury positions, *id.* at 27, 30.  Mr. Cheatham is an honest man: he admitted that he only

complained initially about two non-selections and that, to include the Grand Jury and Domestic

Violence vacancies, the accepted charge itself would have had to be amended.  *See* 29 C.F.R.

§ 1614.106(d).

Mr. Cheatham's request for discovery[8] also recognizes that he had failed to exhaust his administrative remedies on the Grand Jury and Domestic Violence non-selections before filing suit.  "Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible . . . ."  *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985); *see also Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (observing that the goal of exhaustion is to give the agency "an opportunity to resolve [the] claim administratively before [the employee] file[s] her complaint in district court" (alterations in original) (internal citation and quotation marks omitted)).  Mr. Cheatham's informal complaint said that he had applied for approximately seven supervisory positions "over at least (7) years," and that his "most recent act of discrimination was on *May* 21, 2008 [when he] was not selected for (2) recent Paralegal positions."  EEO Website Complaint at 1–2.  In his formal complaint, he said that he had applied for 13 or more supervisory positions over seven years, that his last date of discrimination was *July* 21, 2008, and that he had not been selected for four supervisory positions within the last 30 days.  2008 Formal EEO Complaint at 11.  The EEO Office accepted for investigation the matters on which Mr. Cheatham had been counseled, *i.e.*, two supervisory paralegal positions, and advised him to tell them if that were in error, which he did not.  Throughout the investigation, Mr. Cheatham received and reviewed the Agency's affidavits and documents and

---

[8]  Mr. Cheatham argues that he is entitled to additional discovery under Fed. R. Civ. P. 56(f). Pl. Opp. at 13–17.  This argument, which misses the point and is riddled with clearly inaccurate factual statements, is unpersuasive.  Mr. Cheatham claims that he "cannot identify his comparators" without additional discovery, but he has himself attached the entire candidate list to his opposition to the motion for summary judgment.  *See* Pl. Opp., Ex. 23 [Dkt. 14-4] ("Candidate List") at 77.  He asks for data on systemic discrimination against males, which is not relevant to the limited charges he brought.  Moreover, Mr. Cheatham's argument about the allegedly limited scope of the 2009 ROI is entirely a red herring that represents yet another attempt to revisit his decision to narrow the scope of his EEO complaint to just two positions. The issues for this Court are ones that can be answered on the present record: the scope of Mr. Cheatham's complaint in the administrative proceedings and whether he exhausted his administrative remedies as to the claims he has brought to Federal court.

never indicated that the investigation was narrower than his EEO complaint.  Only much later, as described above, did he attempt to persuade the AJ to allow him to amend the charge to enlarge it from two to four alleged instances of discrimination in non-selection.

Counsel's argument that this lawsuit is timely because it was filed within 180 days of Mr. Cheatham's formal complaint to the EEOC and before any hearing on the complaint misses the critical point that Mr. Cheatham's formal complaint did not follow the necessary precursor of counseling on four non-selections and was not accepted for investigation into four nonselections, a limitation that he did not timely correct or protest until the tail end of the administrative process—which he abruptly truncated immediately before an AJ hearing.

"Title VII '[c]omplainants must timely exhaust the[ir] administrative remedies before bringing their claims to court.'"  *Payne*, 619 F.3d at 65 (quoting Bowden, 106 F.3d at 437).  Mr. Cheatham did not exhaust his administrative remedies as to two of the supervisory paralegal positions for which he was not selected, and those are the two positions about which he complains here.  *See Marshall v. Fed. Express Corp*., 130 F.3d 1095, 1098 (D.C. Cir. 1997) ("[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." (alteration in original) (internal citation omitted)).  Accordingly, summary judgment will be granted in favor of the USAO as to Mr. Cheatham's gender discrimination claim, Count One of the Amended Complaint.

## B.  Retaliation

The Court next turns to Mr. Cheatham's retaliation claim, Count Two of the Amended Complaint, which is based on two alleged retaliatory acts: a reduction in his customary "Outstanding" performance rating to "Successful" and the denial of a promised cash award in the

amount of $1,500. The merits of his EEO charges are irrelevant to the question of whether the

USAO retaliated against him. *See Steele v. Schafer*, 535 F.3d 689, 696 (D.C. Cir. 2008)

(observing that inquiry into the merits of the underlying discrimination charge is "expressly

foreclose[d]" when considering a retaliation claim (citations omitted)). The USAO argues that

neither instance constitutes a "materially adverse" employment action and, in the alternative, that

Mr. Cheatham cannot rebut the USAO's legitimate, non-retaliatory reasons for each act. *See*

Def. MSJ Mem. at 28–37.

Title VII's antiretaliation provision prohibits an employer from "discriminat[ing]

against" an employee because he has "opposed" a practice proscribed by Title VII or because

"he has made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing." 42 U.S.C. § 2000e–3(a). To make out a retaliation claim, a plaintiff

must show "(1) that he opposed a practice made unlawful by Title VII; (2) that the employer

took a materially adverse action against him; and (3) that the employer took the action 'because'

the employee opposed the practice." *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012).

Materially adverse actions are not limited "to those that are related to employment or occur at the

workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). However, a

plaintiff must show that the employer's actions "would have been materially adverse to a

reasonable employee." *Id.* at 68. Further, "an employer's actions must be harmful to the point

that they could well dissuade a reasonable worker from making or supporting a charge of

discrimination." *Id.* at 56.

When the employer offers a "legitimate, non-discriminatory reason" for the

allegedly materially adverse action, "the sole remaining question" becomes "retaliation *vel*

*non*—whether, based on all the evidence, a reasonable jury could conclude that [the] proffered

reason . . . was pretext for retaliation." *Pardo–Kronemann v. Donovan*, 601 F.3d 599, 603–04

(D.C. Cir. 2010) (internal quotation marks and citations omitted); *see also McGrath*, 666 F.3d at

1380 n.3 ("[T]he only question is whether the employee's evidence creates a material dispute on

the ultimate issue of retaliation." (internal quotation marks and citations omitted)).  A plaintiff

can show pretext "either directly by [showing] that a discriminatory reason more likely

motivated the employer or indirectly by showing that the employer's proffered explanation is

unworthy of credence." *Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009) (*quoting U.S.*

*Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)).

Retaliation can take many forms and need only be a sufficiently material negative

action to dissuade a reasonable employee from further pursuing EEO activity.  *Steele*, 535 F.3d

at 696 (citing *Burlington Northern*, 548 U.S. at 68).  Both of the actions of which Mr. Cheatham

complains would qualify as sufficiently material if prompted by retaliatory animus: a reduction

in his customary "Outstanding" performance rating to "Successful" and the denial of a promised

cash award in the amount of $1,500.  *See Burlington Northern*, 548 U.S. at 56, 68; *Weber*, 494

F.3d at 186–87 (holding that loss of a financial award is an adverse employment action).[9]  Mr.

Cheatham's overall performance rating was "Outstanding" from 2005 to 2009 and in 2010 was

reduced to "Successful."  *See* 2009–10 Evaluations at 5; 2004-07 Performance Evaluations at

39–70.  The USAO also acknowledges that Mr. Cheatham received a letter advising him that he

---

[9] The USAO's reliance on *Baloch v. Kempthorne*, 550 F.3d 1191, 1195 (D.C. Cir. 2008), which it argues is "virtually identical" and compels the conclusion that the lowered evaluation was not an adverse employment action, *see* Def. MSJ Mem. at 28–29, is unpersuasive.  As the USAO concedes, in *Baloch*, the plaintiff "did not produce evidence showing that the 2003 negative performance evaluation could affect his position, grade level, salary, or promotion opportunities."  550 F.3d at 1199.  On the facts of this case, where Mr. Cheatham has sought a promotion for years and has claimed that the poor evaluation "limits his options to seek other employment," 2011 ROI at 48, the Court finds that the less positive evaluation could dissuade a reasonable employee from further EEO activity and thus constitutes a materially adverse action.

would be awarded $1,500 for excellent performance and then no such award was forthcoming. Since Mr. Cheatham's prior EEO activity is also uncontested, although not necessarily known to all relevant actors, the question becomes whether the Agency can articulate a legitimate non-discriminatory reason for its actions and, if so, whether Mr. Cheatham can demonstrate that those reasons are pretextual.

Starting with the denial of the promised cash award, the Agency employs two persons with the last name of Cheatham: Richard Cheatham, the plaintiff, and Virginia Cheatham, an Assistant United States Attorney (AUSA). Everyone agrees that Richard Cheatham received a letter congratulating him on a performance-based cash award. 2011 ROI at 50; Lieber Decl. at 14. The USAO says that the letter to Richard Cheatham was supposed to go, with the promised cash award, to Virginia Cheatham. The USAO submits sworn declarations and records supporting its claim of "human error" on the part of a Budget Officer who made the erroneous data entry, including evidence of the USAO's apology to Mr. Cheatham by voicemail. *See* Lieber Decl. at 14, Bragg Lee Decl. at 70–71. Mr. Cheatham argues that he would have received the award except for retaliation, but he offers no evidence to support his argument that retaliation is to blame.[10] Summary judgment will thus be granted to the USAO on this claim. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) ("[A] mere unsubstantiated allegation . . . creates no genuine issue of fact and will not withstand summary judgment[.]" (internal citation and quotation marks omitted)).

Mr. Cheatham's first allegation is more complicated and cannot be decided on the present record. Mr. Cheatham has presented a prima facie case of retaliation relating to his performance review and USAO has responded that the attorneys with whom he worked were

---

[10] Moreover, there is no evidence that any person involved in the erroneous award knew of his prior EEO activity.

dissatisfied with his performance.  On the written record, it is very difficult to distinguish a slack

performance by a disgruntled employee "after EEO activity" from a lowered evaluation by

disgruntled supervisors "because of EEO activity," and this record offers no distinguishing facts.

A jury is better suited to determine which interpretation is correct.

Because there is a genuine dispute over material facts concerning the basis for Mr.

Cheatham's lowered performance rating, the Court will deny summary judgment to the USAO

on Count Two in part.

## IV.  CONCLUSION

For the foregoing reasons, summary judgment will be granted to the USAO on

Mr. Cheatham's discrimination claims, Count I of the Amended Complaint, and on Mr.

Cheatham's retaliation claim based on his non-receipt of a cash award, Count II.  Summary

judgment will be denied as to Mr. Cheatham's retaliation claim in Count II based on a decline in

his performance evaluation in 2010.

A separate memorializing Order accompanies this Opinion.


DATE: April 2, 2013


_____/s/_____
ROSEMARY M. COLLYER
United States District Judge